NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1333
_____

SHAUN A. PARKS,

Appellant
v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-08-cv-00517)
District Judge:  Honorable Noel L. Hillman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 16, 2010

Before:  AMBRO, FISHER and WEIS, *Circuit Judges*.

(Filed: November 22, 2010)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Shaun A. Parks appeals from the District Court's order affirming the final decision

of the Commissioner of the Social Security Administration denying his application for

Disability Insurance Benefits and Supplemental Security Income under Title II and Title

XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* For the reasons stated below, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Until 2003, Parks was a heavy user of hallucinogenic drugs and a heavy drinker. On November 4, 2004, Parks was admitted for psychiatric evaluation after claiming that he was being poisoned and implanted with microphones. Thereafter, he was prescribed medication for the treatment of depression. In April 2005, Parks was again admitted for psychiatric evaluation after he attempted suicide. At that time, Parks tested positive for marijuana use and was diagnosed with schizoaffective disorder. In May 2005, Parks threatened suicide again. In June 2005, Parks began outpatient counseling and was prescribed additional medications. By August 2005, Parks reported significantly fewer auditory hallucinations. However, he continued to use marijuana on a near daily basis which necessitated constant adjustment of his prescription medication.

On August 25, 2005, Parks filed an application for disability benefits maintaining that as of August 6, 2004, his schizoaffective disorder rendered him completely disabled and unable to work. Prior to this date, Parks worked as a cashier, a driver, and an assistant manager. Although he subsequently worked as a pizza delivery person, the

income derived from this employment did not amount to "substantial gainful activity," and thus did not affect his eligibility for benefits. The state agency responsible for making initial disability determinations denied Parks' application. Parks requested that an Administrative Law Judge ("ALJ") review the denial. The ALJ heard the testimony of Parks as well as the testimony of the Vocational Expert. The ALJ determined that Parks was not disabled and accordingly denied benefits. Subsequently, the Appeals Council denied Parks' request for review of the ALJ's decision. The District Court affirmed the decision of the ALJ. Parks now appeals to this Court.

II.

The District Court exercised subject matter jurisdiction pursuant to 42 U.S.C. § 405(g) (2006). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. On appeal, we review the ALJ's decision to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981). We will affirm the decision of the ALJ so long as it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1191.

According to the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is unable to engage in substantial gainful activity when "his physical or mental [ ] impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

The Commissioner employs a five-step evaluation process to determine whether a claimant is disabled and thus entitled to Disability Insurance Benefits. The Commissioner determines: (1) if the claimant is currently engaged in substantial gainful employment; (2) if not, whether the claimant suffers from a severe impairment; (3) if so, whether the impairment meets the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) if not, whether the claimant can perform his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy. *See* 20 C.F.R. § 404.1520. If the claimant cannot perform any other work which exists in the national economy, he qualifies as disabled and receives benefits accordingly. *See id.*

4

III.

On appeal, Parks sets forth several arguments for review. First, he contends that the ALJ's decision regarding his functional limitations is not supported by substantial evidence. Second, Parks alleges that the hypothetical question composed by the ALJ and given to the Vocational Expert is inadequate because it failed to convey all of his mental limitations. Third, Parks claims that the ALJ failed to consider the effect of his substance abuse in step five of the analysis. Finally, Parks argues that the ALJ incorrectly afforded substantial weight to the medical opinions of Drs. Frederick Kurz and Carla Tucker-Okine. We address each argument in turn.

A.

The evaluation process of an individual's mental impairments requires the use of a "special technique." 20 C.F.R. § 404.1520a(a). The special technique "is a complex and highly individualized process" which includes the consideration of many issues and any relevant evidence in order to determine an individual's degree of functional limitation. *Id*. § 404.1520a(c)(1). The four categories considered are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). Categories (1)-(3) are measured on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). Category (4) is measured on a four-point scale: none, one or two, three, four or more. *Id.* On each scale,

the last point represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id*.

On appeal, Parks contends that the ALJ's decision in each and every category of the special technique is not supported by substantial evidence. The ALJ determined that Parks suffered from: mild restrictions in daily living, moderate limitations in social functioning, moderate limitations with respect to concentration, persistence, and pace, and one or two episodes of decompensation. With regard to each category, Parks contends that the evidence supports a higher degree of limitation. The government rebuts each argument and argues that the ALJ properly employed the special technique and that the ALJ's assessment is supported by substantial evidence. We agree with the government and find that each of Parks' contentions lacks merit.

First, Parks argues that the activities of daily living considered by the ALJ are restricted or limited and indicate a severe functional limitation. According to Parks, listening to music, sleeping ten to twelve hours per day, playing video games, and bathing almost every day do not constitute sufficient activities of daily living. On this point, we disagree with Parks. In essence, he claims that because he chooses to listen to music, sleep, and play video games on a daily basis instead of cleaning, shopping, or paying bills, he suffers from a severe limitation with respect to function. Simply choosing to engage in one leisurely activity over another does not merit a finding of

6

serious impairment of daily living activities. Therefore, we hold that the ALJ's finding of mild restrictions of daily living activities is supported by substantial evidence.

Second, Parks contends that living with his mother, having only one friend, being fearful of others, and living in relative social isolation is indicative of severe or marked limitation in social functioning. "Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ability to get along, communicate clearly, and cooperate with others are examples of strengths in social functioning. *Id.* Furthermore, a marked limitation in social functioning requires consideration of the nature and overall degree of interference with function. *Id.* However, the ALJ considered Parks' living arrangement and his relative social isolation. The ALJ specifically noted that Parks was able to interact appropriately and courteously with others, including medical personnel. In light of all of the evidence, the ALJ determined that Parks suffered only from moderate limitations with regard to social functioning. We find that the ALJ's decision is supported by substantial evidence.

Third, Parks contends that the ALJ's determination of moderate difficulties in concentration, persistence, or pace is not supported by substantial evidence. "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* Parks argues that his history of delusions and

7

hallucinations supports a finding of greater limitation. However, he also testified that he had the ability to read, watch television, and play video games. The ALJ found that these activities required a degree of concentration, persistence, or pace. We agree and hold that when all of the testimony is considered together, substantial evidence supports the ALJ's finding of moderate limitations in concentration, persistence, or pace.

Fourth, Parks claims that the ALJ did not properly determine the episodes of decompensation. "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id*. A claimant may demonstrate episodes of decompensation "by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id*. Additionally, "[e]pisodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system . . . ; or other relevant information in the record about the existence, severity, and duration of the episode." *Id*. The term "repeated episodes of decompensation" refers to "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id*.

After considering the evidence, the ALJ determined that Parks suffered from only one or two episodes of decompensation. Parks argues that his two suicide attempts and

termination from his pizza delivery position support a greater finding of decompensation episodes. Contrary to Parks' argument, the ALJ appropriately considered all the evidence and the ALJ concluded that Parks was functional. We agree that the ALJ's finding was supported by substantial evidence.

After reviewing the ALJ's decision, we find that the ALJ properly determined Parks' functional limitations according to the "special technique." Therefore, we will affirm the District Court's ruling.

B.

Parks next argues that the hypothetical question posed to the Vocational Expert did not accurately reflect all of his impairments. The ALJ, relying on testimony by the Vocational Expert, determined that Parks had the Residual Functional Capacity to perform simple, unskilled work with restricted social interactions. Parks argues that the ALJ did not list all of his impairments when posing the hypothetical question to the Vocational Expert. Additionally, Parks contends that the Vocational Expert testified that to be employed a person could no longer be experiencing hallucinations. Because he is experiencing hallucinations, Parks contends he is not employable.

Parks' arguments fail for several reasons. As noted by the District Court, he does not expressly indicate which impairments the ALJ failed to include. In addition, Parks mischaracterizes the testimony of the Vocational Expert. The Vocational Expert testified that, to be employable, a person's hallucinations must be controlled. The Vocational

9

Expert did not testify that a person must be free of hallucinations. Therefore, we find that the hypothetical question posed to the Vocational Expert was adequate and will affirm the decision of the District Court.

C.

Parks also contends that the ALJ incorrectly considered his marijuana use in step five of the analysis. According to the Social Security Act, "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the [ALJ]'s determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In order to consider the effect of alcohol or drug addiction on a finding of disability, the individual must first be found disabled. In this case, the ALJ did not find that Parks was disabled. Therefore, it was unnecessary for the ALJ to determine whether Parks' marijuana abuse was a material factor.

D.

Finally, Parks asserts that the ALJ's decision to give substantial weight to the medical opinions of Drs. Kurz and Tucker-Okine is not supported by the record. Parks argues that Dr. Kurz's opinion is based on an interview and is not credible. Parks next argues that Dr. Tucker-Okine's opinion that Parks is not credible due to his substance abuse is not supported by evidence. Parks claims that if he were lying, he would have never admitted to drug use. However, Parks' claims lack merit. In affording significant weight to the opinions of Drs. Kurz and Tucker-Okine, the ALJ expressly noted that the

10

opinions were consistent with each other and with credible evidence in the record. Additionally, both opinions were corroborated by Christopher King, Psy.D. Therefore, we conclude that the ALJ's decision to give substantial weight to the medical opinions of Drs. Kurz and Tucker-Okine is supported by substantial evidence.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

11